## STATE v. SAMUEL J. MORRELL.

### *Taxes—Peddlers.*

The *proviso* to sec. 23 of the Revenue Law of 1887 (chap. 135,) exempting persons who sell goods of their own manufacture from payment of the peddler's license tax, does not apply for the benefit of one who merely mixes and boils certain drugs and medicines together, and sells them under a deceptive name, as "Herbs of Life."

INDICTMENT for peddling without a license, tried before *Gilmer, J.*, at October Term, 1887, of the Superior Court of FORSYTH.

There was judgment on a special verdict for the defendant, and appeal by the State.

The defendant is charged with peddling without a license, in violation of the act of March 7th, 1887, entitled An Act to Raise Revenue; chap. 135, section 23, of which declares, "that every person, a citizen of the United States, authorized to do business in this State, who, as principal or agent, peddles nostrums, medicines or goods, wares or merchandise, of whatever name or description, shall pay a license tax as follows"—graduating the amount and prescribing how the license shall issue, &c. The concluding clause of the section is in these words: "*Provided*, that this section shall not apply to persons who sell goods of their own manufacture within the State, printers soliciting orders, spirituous liquors excepted."

Section 35 declares, "that every person, who shall practice any trade or profession, or use any franchise taxed by the laws of North Carolina, without having first paid the tax and obtained a license, as herein required, shall be deemed guilty of a misdemeanor, and punished," &c.

The defendant, on his arraignment, pleaded not guilty,

and at the trial the jury rendered the following special verdict:

The defendant carried on the business of selling medicines in this manner: He came to Winston, and, renting a house, engaged in the manufacture of medicine called the "Herbs of Life." He bought from the resident druggists alcohol, chloroform, tincture of capsicum, and other ingredients, and boiled them together, bottled the compound, and labelled it "Herbs of Life." He then leased vacant lots in different parts of the town, and held open air concerts, with music, dancing and minstrel performance. At intervals he would address the crowd, and extract teeth, while venders of the medicine passed through the audience, with the medicine in baskets, selling the same. He followed this business for several nights, and having been applied to by the Sheriff of the County to pay a peddler's tax, and take out a peddler's license, he refused, whereupon was instituted the present proceeding (the issue of a warrant and his arrest, and being carried before an examining Justice). He paid no tax of any kind.

The jury say, that if, in the opinion of the Court, upon the foregoing, the defendant is in law guilty, the jury so say; otherwise, they say he is not guilty.

The Court being of the opinion that the defendant was not guilty, so adjudged, and directed him to be discharged; and from the judgment the State appealed.

*The Attorney General* and *Mr. J. C. Buxton*, for the State.
*Mr. R. B. Glenn*, for the defendant.

SMITH, C. J., (after stating the facts). The case presented in the verdict is clearly within the prohibitory words of the statute, from which we have quoted, since the manner of vending made him a peddler, and the article thus disposed of is embraced in the statutory enumeration of those for which a license, preliminary to such peddling, is required by the

law. This was conceded in the argument before us, and the controversy was, whether the mixture thus prepared and sold were *goods* of the defendant's own manufacture, in the sense of the exempting and concluding proviso.

The contention on behalf of the State is, that inasmuch as the article peddled was a "nostrum, or medicine," and plainly the latter, after which, are enumerated "goods, wares and merchandise," the former constitute a distinct class, of which an unlicensed sale by peddling is forbidden, and when, in the process, the prohibition is removed from "goods" maufactured by the party himself, it has no application to the articles designated "nostrums, or medicines," and as to these, the act remains in force, unaffected by the exception in the proviso.

While there is force in the suggestion of such restricted operation in the proviso, and that the intention was to allow the sale of one's own manufactured or made goods, others than those denominated "nostrums, or medicines," as to which a license in all cases is required, we are not prepared to accede to such a rigid interpretation to a statute so highly penal, and to say that the term *goods*, used for brevity, and comprehensive enough, in its general meaning, to embrace the preceding articles also, yet, we think, the mere admixture of the drugs constituting the "Herbs of Life," the attractive and delusive name given to it, is not a process of manufacturing within the meaning of the exception. The mere fact, that the drugs were here mixed by the defendant, could scarcely have been intended to place them beyond the contemplated taxation, while the same mixture done by others would be subject to the tax. The distinctions could hardly have been contemplated by the enacting General Assembly. The mixing of ingredients is not the conversion of them into a new article, of which the process of manufacturing can be reasonably predicated. The process meant, was such as a conversion of rags into paper, ginned cotton into yarn,

or cloth, wood into articles of farm or domestic use, and the like. So that a new article is formed, and this by the industry of man and expenditure of labor, which, by its increased value from labor thus bestowed, it was intended by the exemption to foster and favor.

Thus understood, the defendant cannot, by merely putting certain drugs together and boiling them, avail himself of the proviso and escape the tax.

There is error, and the judgment must be reversed, and upon the verdict, judgment entered against the defendant in the Court below.

Error.                                     Judgment reversed.